It often happens in cases of alleged sexual molestation that the state court trial comes down to a credibility contest between the victim and the defendant. Often there is nothing, little or nothing, to corroborate either version. That is, there is no DNA, there is no other witness. There are two versions which are substantially similar as to where the people were and how they were moving about in the house, but the bottom line is substantially different as to whether there was touching. In a situation like this, the conduct of the parties assumes the greatest significance in the jury's determination. In the matter of the defendant's testimony, the most important factor which can detract from his credibility is his record of prior similar conduct. And that came into issue in this case, prior similar conduct which was introduced through the attorney's decision to put on Dr. Fowle. In the matter of the victim's testimony, the most important single thing which we can bring to the jury's attention and which can detract from her credibility is a record or prior instances of making false allegations in similar circumstances about important things that could affect the lives of the adults around her. Now, we have argued that Amanda was trying to place, change her placement back to Los Angeles, that she didn't like Amador County, that she didn't seem to get along with the people who lived in Amador County, she didn't like the way of life in Amador County, and she wanted to go back to Los Angeles. I think the timeline is significant. When we look at this in light of the new evidence that came up after the conviction, the timeline is this. In the summer of 1998, Amanda was age 18. She moved to Amador County from Los Angeles. By October of 1998, this allegation surfaced. Now, that was on her 14th birthday. So up to age 13, she was a citizen of Los Angeles, and she moved to Amador County. This incident occurred a few months after moving to Amador County. Then it took almost a year for this case to get to trial. It went to trial in August. The legal question that we've got to resolve. The legal question is whether the defendant was denied confrontation by the loss of the child, by the use of this false allegation that she made against her stepfather. Is that the issue? Is this a habeas case? Beg your pardon? This is a habeas case. So that's not the issue. That may have been the issue on direct appeal. Isn't the issue here whether or not there was a misapplication, clear misapplication of Supreme Court authority here? The Supreme, let me cite Poynter v. Texas, 380 U.S. 400 in 1965, basic confrontation, Van Arsdale v. Delaware. The question is whether the state court misapplied or misread the record in a way that denied the defendant his right of confrontation. As I say, we get to August of 1999. We have this trial. Mr. Vick is convicted. And then in the same month, we have Amanda writing a letter to the Child Protective Services complaining about her stepfather. By the time of Mr. Vick's sentencing in November, guess where Amanda is? She's in Los Angeles. Now it's been repeatedly asserted that it's speculation and a mere matter of cumulative evidence to say that she wasn't, that this indicates or suggests or infers that she wasn't telling the truth, that she was making false allegations against adults in order to get herself transferred back to Los Angeles. We'd submit to the State Court. Do we look at what? Do we look at the record? I know what I don't know, but I gather what you're saying is the child was lying, that he didn't do it, that it happened just exactly like he said it happened, and therefore we should do something. I don't quite know how to answer that. What we want is a new trial. We want a fair trial. We want a trial in which she can be impeached with this false allegation which she made against Jason Smith. And yes, it's the result of the trial. If she was going to make a false allegation, she could have had his hand that was reaching to a whole lot more than she had it do. She didn't say. He was reaching towards. He hadn't touched her private parts. He was reaching towards her breasts and was reaching towards her pants. And if she's going to lie, she'd tell a better one than that, wouldn't she? Well, my view is that if a teenage girl is going to make a false allegation, I don't think that she wants to bring the kind of distress or shame upon herself that would come with being the victim of a serious offense. This is serious enough. She knows he's got a prior record, and all she has to do is make this kind of an allegation, and he's going to be taken away. And what's more important is, from her perspective, is that this is going to... This record, he admitted he was in the room, didn't he? Sure. And he had his reasons for going in there, and he admitted what he was doing when he was in there. He was giving her some aspirin. Yes. Which issue in your brief are you arguing? This is argument number four. Four? It's... The motion for new trial on the ground that there was newly discovered evidence concerning the victim's propensity to make false allegations? Yes. Now, we've also argued that it was ineffective assistance of counsel for the defense attorney to put on Dr. Fowle, which brought in the... That's what brought in the, you might say, the other side of the coin. The thing that made him look worse was a set of allegations that came up 37 years earlier that would not have come into evidence except that Dr. Fowle was called to testify as a defense witness. Well, I don't see any Supreme Court case cited here that says that, or Federal law that seems to compel the, the, the, the group to testify.  any, I don't see any, I don't see any, I don't see any, I don't see any, I don't see any grant of a new trial on this basis. We... It's awfully pretty discretionary in, in, in, in the argument. I, I, I'm not quite sure I see how we're, the avenue for relief in Federal court that we could follow. Okay. We, our primary reliance is on Fowler. It's a decision of this court from 2005. And in, in that case, it was a similar scenario, similar kind of offense. It turns out that the girl had made a false allegation. And that was six years earlier. And that, there was an opportunity to impeach the girl. And the defendant was denied the opportunity to impeach the girl with her prior mendaciousness. Now, this is similar to that case. The timing is slightly different because it comes up on a new trial motion rather than at the, at or during the trial. Nevertheless, it's relevant. Was this case tried? It, this case was tried in August of 1999. And in, in that month, and while the court still had jurisdiction... But don't you know what you're asking us to do? You're asking us to say, here's a trial. Here's the allegation. Here's what she said. And then you want us to say, you should grant a new trial because subsequent to the trial, she made an allegation about somebody else that wasn't true. So the court, as, as a constitutional matter, made an error in not letting you reopen. Don't, don't we have to go that far? That's, that's basically the sequence. The, the false allegation... What Judge Schroeder is asking you is, what case are you relying upon to say that, that violated Supreme Court decisions? Well, the, it seems to me that the, that the State is taking the position that there, that, that all of the courts that view this sequence of events have to kind of have blinders on in terms of whether there's a constitutional violation just because this comes up a few weeks after the verdict. Now, it is entwined with the verdict. It is because the verdict didn't get her moved to Los Angeles that she makes another allegation. No, you had a chance to argue this to the, to the trial court, to the California District Court. But they all must have, must have missed something. Well... It requires a different result, and I'm not hearing what that is. Well, here's what the prior courts have said. It's very simple because they've all just repeated the same thing, that this is cumulative, that she was already shown to be a liar. Okay? I mean, of course, this is conveniently, in, in the earlier argument, she, it's said that she's very credible. But for this argument, it is said that she has already been shown repeatedly to be a liar. Well, not only is that inconsistent with... Counsel? Yes. Sorry? Well, the Supreme Court case says that the determination that this is cumulative is erroneous. This is an unreasonable interpretation of the state court record under D-2 of Section 2254. And if the, if the state court says that their witness, on the one hand, is very credible, nice girl, doesn't, you know, oh, you, you, the stuff you impeached her on was minuscule, minor, trivial, and then comes back in the new trial motion and says that she was, that the impeachment was real effective, well, that's just inconsistent. They're talking out of both sides of their mouth depending on what result they want to reach. That's the kind of thing that under D-2 this Court has to be alert to because it's twisting the record. It would probably have helped your argument if you hadn't. The very next morning told the young child who was with her what had happened the night before. She said that Ernie, she said, quote, Ernie tried to rape me. No, she didn't. Unquote. That's not what the record said, she said. She said, I think maybe he tried to rape me. Okay. Okay. Well, it doesn't look to me like this was an attempted rape, and I think the story changed a little bit or was refined as she thought about it, that's all. It's not a heavily corroborated case. I would like to reserve the rest of my time. Thank you. May it please the Court, Deputy Attorney General David Loeb for respondent I think counsel spent a lot of time arguing issue number four, and it looks pretty clear from, or excuse me, it looks pretty clear from Respondent's point of view that the Court has a pretty good grasp on that issue. To answer the Court's direction correctly, as argued in our brief, there is no United States Supreme Court president compelling Could you slow down just a little bit? Sure. Please. Thank you. There is no United States Supreme Court president compelling a new trial motion because some sort of impeachment evidence may or may not have been developed after trial. And it's not a due process violation. I think that's what they're trying to argue, although it looks like counsel is attempting to argue that this is a somehow denied the right to confrontation, to the confrontation clause. And my understanding of that is that is a trial right. This defendant was given fair trial. There was nothing fundamentally fair about it. The trial court in no way impeded cross-examination of the victim. I'd like to move on. In terms of Amanda's credibility, it was brought up briefly. Amanda was corroborated in numerous respects. I'm not going to go into all of them that are in the brief. I would just say that counsel said that Amanda knew that this guy had a criminal history, Mr. Vick did. No, she didn't. There's absolutely nowhere in this record that you'll find that this victim knew about the criminal history. Well, we're not retrying the case, and we're not retrying the circumstances. But the parents, the mother who gave consent for these children to go to his house when they would not normally have been there, based on a story that he told that was flimsy at best in terms of convincing a parent that a man who had had this history needed to have two children in the house with him, might be the one who should have been charged. But that's not for us to decide. The thing we're going to decide is this case on this record. And on this record, he has a burden, and I gather your position is he didn't carry it. That is absolutely correct, Your Honor. All right. Are there any further questions? No. I think this is pretty well briefed. Thank you. Thank you. No questions. Thank you. If there are no further questions, I'll submit it. Thank you. Thank you.
judges: Schroeder, Farris, Rawlinson